**Denise McGREGOR, Individually and as Executrix of the Estate of Roy McGregor, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Nos. 1340, 1341, Dockets 90–6281, 91–6009.**

United States Court of Appeals, Second Circuit.

Argued April 18, 1991.

Decided May 15, 1991.

Joseph S. Coté, Syracuse, N.Y. (Devorsetz, Stinziano & Smith, P.C., of counsel), for plaintiff-appellant.

Paula Ryan Conan, Syracuse, N.Y., Asst. U.S. Atty., for N.D.N.Y. (Frederick J. Scullin, Jr., U.S. Atty., for N.D.N.Y., of counsel), for defendant-appellee.

Before LUMBARD, FEINBERG and McLAUGHLIN, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Denise McGregor, individually and as executrix of the estate of her husband, Roy McGregor, brings a consolidated appeal from two separate judgments in the United States District Court for the Northern District of New York, dismissing two complaints she had filed against the United States. The first judgment, dated October 1, 1990, Howard G. Munson, J., dismissed her initial complaint on the ground that she had failed, without good cause, to serve the Attorney General of the United States within 120 days after filing her complaint, as required under Fed.R.Civ.P. 4(d)(4) and 4(j). McGregor had brought suit under the Federal Tort Claims Act, seeking damages for medical malpractice and wrongful death suffered by her husband as a result of allegedly negligent medical treatment provided by the Veterans Administration. The second judgment, dated December 28, 1990, Con. G. Cholakis, J., dismissed with prejudice McGregor's second complaint, which restated the claims of her first suit and was filed immediately after Judge Munson's decision in open court to dismiss the first complaint. The basis of Judge Cholakis's order was that the second complaint was barred by the applicable statute of limitations. Because we believe the district court properly dismissed both complaints, we affirm.

## I. Background

In November 1987, plaintiff filed an administrative tort claim with the Veterans Administration, alleging that her decedent husband had been subjected to negligent medical treatment at V.A. Hospitals in Gainesville, Florida and Syracuse, New York, and that this treatment ultimately caused his death by rupture of a cerebral aneurysm. The Veterans Administration denied the tort claim on May 11, 1988.

On November 3, 1988, a few days prior to the expiration of the applicable statute of limitations, plaintiff timely commenced a suit against the United States under the Federal Tort Claims Act, seeking compensation for the injuries suffered by her husband, her children and herself as a result of the negligent treatment resulting in her husband's wrongful death. Rule 4(d)(4), which prescribes how service is effected upon the United States, requires that a copy of the summons and complaint must be delivered to the local United States Attorney and sent "by registered or certified mail to the Attorney General of the United States." Rule 4(j), which deals generally with the time limit for service, further provides:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

On the same day plaintiff filed her complaint, November 3, 1988, she properly served the United States Attorney for the Northern District of New York (hereafter, the United States Attorney) by having a copy of her summons and complaint personally delivered to his office. Plaintiff did not, however, make any attempt within the 120–day period to serve the United States Attorney General (hereafter, the Attorney General) by sending a copy of the summons and complaint to his office by registered or certified mail.

On January 3, 1989, the United States timely filed its answer to plaintiff's suit, raising a number of affirmative defenses. The first was lack of jurisdiction. The third was: "Plaintiff's complaint fails for sufficiency of process, and cannot now be brought within the time necessary to bring an action under 28 U.S.C. Section 2401." Upon receipt of this answer, plaintiff took no action either to clarify or remedy the defect in process. Between January and March of 1989, discussions took place between opposing counsel to fix the schedule for filing motions and completing discovery, and in March 1989 the parties entered into a stipulation setting out the schedule. At the end of July 1989, the Attorney General first received a copy of plaintiff's complaint from the Office of General Counsel of the Veterans Administration. By letter on August 3, 1989, the Attorney General delegated authority to handle the suit to the United States Attorney, although the United States Attorney never received a copy of this letter.

In October 1989, the United States Attorney provided copies of relevant medical records and other documents to plaintiff's attorneys, and a deposition of one of the medical witnesses was conducted. In March 1990, roughly 14 months after receiving defendant's answer, plaintiff's attorneys first served interrogatories upon the United States seeking, among other things, to determine the basis for the government's claim of insufficiency of process. Following a review of its records, the United States responded in May 1990, indicating that service of process upon the Attorney General had not been effected in compliance with Rule 4(d)(4) and that plaintiff's complaint was thus subject to a motion to dismiss under Rule 4(j). On receipt of this answer, plaintiff's attorneys still did not take prompt action to remedy the defect in service.

In July 1990, the United States moved to dismiss plaintiff's complaint for insufficiency of service of process. In response to this motion, on August 6, 1990, plaintiff's

attorneys first served a copy of the summons and complaint upon the Attorney General, some 17 months after the period for proper service upon the United States had expired. Plaintiff opposed the government's motion to dismiss by cross-moving for leave to file an amended complaint under Fed.R.Civ.P. 15(a), arguing that by completing proper service on the amended complaint the original defect in service would be "cured."

In a bench ruling in September 1990, Judge Munson granted the government's motion to dismiss for failure to effect timely service upon the United States, and he also denied plaintiff's cross-motion to amend the complaint. The judge found that plaintiff's defective service on the Attorney General was the product of her attorneys' mistake and could not be deemed adequate on the ground of "good cause" or "justifiable excuse." He also noted that amending the complaint by adding a new named party does not change the party against whom the complaint was originally filed nor obviate the necessity of complying with the service requirements for the initial complaint under Rule 4(d)(4).

Immediately after Judge Munson's ruling and on the same day, September 21, 1990, plaintiff commenced a second suit against the United States, stating claims virtually identical to those in her first complaint. Shortly thereafter, plaintiff's attorneys effected proper service on both the United States Attorney and the Attorney General in compliance with Rule 4(d)(4). The United States thereafter moved to dismiss this action on the ground that it was barred by the applicable statute of limitations.

In a bench ruling in December 1990, Judge Cholakis dismissed plaintiff's second complaint with prejudice, pursuant to Fed. R.Civ.P. 12 and 28 U.S.C. § 2401(b), which provides that "[a] tort claim against the United States shall be forever barred unless ... action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." The judge rejected plaintiff's

contention that the filing of her first action tolled the applicable statute of limitations, thus allowing her a few days to commence another action following dismissal of her initial complaint. Rather, the judge held that in an action where service is not effected within 120 days of filing and where the statute of limitations has run during that 120-day period, a Rule 4(j) dismissal effectively dismisses the action with prejudice. Accordingly, the judge granted the government's motion to dismiss plaintiff's second complaint with prejudice. This consolidated appeal followed.

## II. Discussion

■ Plaintiff first argues that Judge Munson should not have dismissed her initial complaint because her failure to serve the Attorney General within the required 120-day period was excusable for "good cause" under Rule 4(j).

Relying upon our recent decision in *Zankel v. United States*, 921 F.2d 432, 436–38 (2d Cir.1990), plaintiff identifies various instances of allegedly misleading government conduct that served either to obscure or to minimize the significance of the alleged defect in process, thus implying that plaintiff's attorneys' failure to remedy that defect was for "good cause." The first instance concerns the government's linkage of its insufficiency of process defense in its initial answer with the claim that the statute of limitations on plaintiff's action had expired under 28 U.S.C. § 2401. This linkage, argues plaintiff, involved a misstatement of the law that obscured the real ground of the insufficiency of process defense.

We find no merit in this contention. The government's answer identified insufficiency of process as an affirmative defense well within the 120-day time period in which plaintiff's attorneys could have cured any defect in process. Plaintiff's attorneys did not inquire as to the specific character of the defect in process until over 14 months later, and even upon learning the specific nature of the problem they did not move expeditiously to cure it. The reference to the statute of limitations in

the government's initial answer served, if anything, to notify plaintiff's attorneys of the severe consequences of insufficiency of process for further pursuit of her action.

In this connection plaintiff relies on *Roque v. United States*, 857 F.2d 20 (1st Cir.1988), but that case is quite different. Most importantly, the government's answer there did not refer to any defect in process at all but relied on the affirmative defenses of "lack of jurisdiction over the person of the defendant" and "sovereign immunity." The court there noted that "the government's actions seem calculated to have kept its true objection hidden until the 120 days for service had run." *Id.* at 20–21.

The second instance of allegedly misleading conduct concerns the government's failure to mention at scheduling discussions between January and March of 1989 its intention to make a motion to dismiss on the basis of a service defect. Plaintiff, however, identifies no evidence in the record indicating that the discussions in question concerned the substantive motions under consideration by either side rather than the time frame for their scheduling. In any event, it appears that the claimed discussions took place before the time to perfect service of process—March 3, 1989 —had elapsed, so that at that point government counsel did not have sufficient reason to suppose that a motion to dismiss for untimely service was justified. And, as just indicated, the government's answer indicated that the defect in service could be serious.

A third instance of allegedly misleading governmental conduct concerns the government's failure to answer a specific query by plaintiff's attorney as to whether the government would raise service of process as an affirmative defense. In response to a government request in December 1988 for an extension of time to answer plaintiff's complaint, plaintiff's attorneys agreed to an extension on the condition that the government contact them within a week on whether it would raise a service of process defense. Plaintiff argues that the government did not respond to this request, thereby engaging in misleading conduct. Plaintiff's argument, however, ignores the fact that the government did not accept the extension, but filed a timely answer within a week in which it clearly raised insufficiency of process as an affirmative defense.

Since none of plaintiff's allegations concerning misleading governmental conduct withstand scrutiny, we do not think that the district court erred in finding that it was attorney neglect rather than misleading government conduct that resulted in the service defect. On this basis, the district court did not abuse its discretion in refusing to excuse this defect for "good cause." *Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir.1984).

Plaintiff next argues that even if the insufficiency in service was not justified by "good cause," it should be excused as a mere "technical defect" in service under the doctrine adopted by us in *Zankel*. According to plaintiff, *Zankel* expands the scope of the equitable exception to the requirements of Rule 4(d)(4) originally advanced by the District of Columbia Circuit in *Jordan v. United States*, 694 F.2d 833, 836 (D.C.Cir.1982) (per curiam). In *Jordan*, the court identified four factors that must be satisfied in order to justify an exception to the requirements of Rule 4(d)(4). If (1) necessary parties in the government have actual notice of a suit; (2) the government suffers no prejudice from a technical defect in service; (3) there is a justifiable excuse for the failure to serve properly; and (4) the plaintiff would be severely prejudiced if the complaint were dismissed, then courts should not read Rule 4(d)(4) so rigidly as to deny plaintiffs relief from dismissal. *Id.* at 836.

Plaintiff argues that our ruling in *Zankel* implies that all four factors do not have to be met to justify application of the *Jordan* exception and that, in particular, it is not necessary for a plaintiff to establish a justifiable excuse for the failure to serve properly as long as the other three factors are satisfied. According to plaintiff, since in this case (1) the Attorney General received actual notice of the suit roughly one

year before the motion to dismiss, (2) the government suffered no prejudice from the defect in service, and (3) plaintiff is severely prejudiced by final dismissal of her suit, the district court should have applied the *Zankel* analysis and excused plaintiff's insufficient service as a mere "technical defect." Indeed, plaintiff maintains that her conduct in the present case is indistinguishable from that of the plaintiff in *Zankel*, since they both fully satisfied the requirements of service upon one of the named representatives of the United States. Thus, plaintiff claims she is no less entitled to relief from the sanction of dismissal.

Plaintiff's argument rests on an excessively broad construction of the scope of the *Zankel* decision. In *Zankel*, we did not hold as a general proposition that even if a plaintiff lacks a justifiable excuse for failure to serve properly the plaintiff is entitled to relief from dismissal as long as the other three factors of the *Jordan* analysis are satisfied. Rather, *Zankel* stands for a much narrower proposition, namely, that lack of justifiable excuse does not absolutely preclude relief from dismissal if there is evidence that the government also bears substantial responsibility for causing the defect in service. The decision in *Zankel* was based on the court's view that the government had engaged in an "apparently deliberate attempt to secure the demise of plaintiffs' claims" by lulling plaintiffs into believing that they had successfully cured their service defect while holding in abeyance its own motion to dismiss until after the expiration of the statute of limitations. *Zankel*, 921 F.2d at 437–38. It was precisely this determination that made it possible to apply the *Jordan* exception notwithstanding plaintiffs' lack of justifiable excuse. *Id.*

We find no similar evidence in the present case of misleading government conduct designed to bring about an irremediable defect in service. The complaint was filed just eight days before the expiration of the statute of limitations, so it is clear that the government did not deliberately defer its motion to dismiss to exploit the running of the limitations clock. Moreover, as indicated above, when the government filed its answer raising the affirmative defense of insufficiency of process, plaintiff still had two months to serve the Attorney General. Unlike the situation in *Zankel*, plaintiff's attorneys made no effort to obtain clarification of the specific nature of the insufficiency of process until 14 months after receiving the government's answer. At this point the government responded promptly and identified the specific defect, and plaintiff's attorneys still did not attempt to cure it; rather, they waited until the government made a motion to dismiss. In sum, the record suggests that the burden of responsibility for the defect in service rests exclusively on the negligence of plaintiff's attorneys. Under these circumstances, the conduct of plaintiff's attorneys does not fall within the exception marked out by *Jordan* and *Zankel*. Although we sympathize with plaintiff, we cannot say that the district court's dismissal of her complaint was an abuse of discretion.

■ Finally, plaintiff argues that even if Judge Munson properly dismissed her initial complaint, Judge Cholakis erred in dismissing her second complaint with prejudice on the ground that it was time-barred. Plaintiff contends that the proper filing of her first complaint with notice to the government tolled the running of the limitations clock, and thus after dismissal of her first action she still had a few days to refile a second complaint before the applicable limitations period elapsed. Since plaintiff filed her second complaint immediately upon dismissal of her first action, she argues that her second suit was not barred by the statute of limitations.

Plaintiff's argument is without merit. This court addressed precisely this issue in *Frasca v. United States*, 921 F.2d 450 (2d Cir.1990), and concluded that "the filing of a complaint does not toll the applicable statute of limitations beyond the 120–day period for service provided by Rule 4(j)." *Id.* at 451. Since plaintiff's second complaint was filed in September 1990 and the applicable six-month limitations period started running with the denial of her administrative claim on May 11, 1988, Judge

Cholakis's dismissal of the second complaint with prejudice was proper.

The judgments of the district court are affirmed.