In re Lawrence L. ANDERSON, Lee E. Anderson, Debtors.

UNION TRUST COMPANY, Plaintiff,

v.

Lawrence L. ANDERSON, Lee E. Anderson, Defendants.

Bankruptcy No. 94–50435.
Adv. No. 94–5108.
Doc. I.D. Nos. 8, 13.

United States Bankruptcy Court, D. Connecticut.

March 16, 1995.

Jennifer L. Schancupp, Susman, Duffy & Segaloff, P.C., New Haven, CT, for plaintiff.

Peter A. Kelly, New Haven, CT, for defendants.

## MEMORANDUM OF DECISION

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

On January 4, 1995, there came on for hearing before this Court two competing motions filed by the parties, each of which raises the implications of certain inadequacies in the Plaintiff's service of process upon the Defendants. The Defendants contest the Plaintiff's "Motion to Enter Judgment by Default as to Defendants ..." (Doc. I.D. No. 8) (hereinafter, the "Plaintiff's Motion") on the grounds that (1) this Court lacks personal jurisdiction over the Defendants in this adversary proceeding due to the Plaintiff's failure to effect timely service of process under Fed.R.Bank.P. 7004(f) and (2) this proceeding is subject to dismissal under former Fed.R.Civ.P. 4(j), made applicable to this adversary proceeding by Fed.R.Bank.P.

7004(a)[1] (hereinafter, "Rule 4(j)"). Identical legal grounds are stated as the basis for relief in the Defendants' "Motion to Vacate Default and for Summary Judgment" (Doc. I.D. No. 13) (hereinafter, the "Defendants' Motion").

After hearing held on the Plaintiff's and Defendants' Motions, this Court concluded that it was inappropriate for dismissal of this proceeding to attend the tardy service of process admitted by the Plaintiff and found by the Court. Rather, this Court (1) denied the Plaintiff's Motion; (2) granted the Defendants' Motion in part, by vacating the previously entered default against the Defendants, and (3) denied the Defendants' Motion in part, insofar as that motion sought a dismissal of the adversary proceeding, or summary judgment in the Defendants' favor. In addition to the foregoing dispositions the Court ordered the Clerk of the Court to issue an *alias* summons to the Plaintiff, under which service pursuant to Fed.R.Bank.P. 7004 was to be effected by January 13, 1995. This Memorandum of Decision serves as Findings of Fact and Conclusions of Law in connection with those rulings for purposes of Fed. R.Bank.P. 7052.

## II. JURISDICTION

■ The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I).

## III. FINDINGS OF FACT

On February 17, 1994, the Defendants filed a joint voluntary petition with this Court commencing a bankruptcy case under Chapter 7 of Title 11, United States Code. In connection with that case, May 23, 1994 was established as the deadline for creditors and other parties-in-interest to file objections to the granting of a general discharge to the Debtor–Defendants, or to the dischargeability of specific debts.

On May 23, 1994, the Plaintiff commenced the instant adversary proceeding through the filing of a "Complaint To Determine Dischargeability of Debt" (hereinafter, the "Complaint"). In due course the Clerk of the Bankruptcy Court issued to the Plaintiff a Summons and Notice of Trial in an Adversary Proceeding (hereinafter, the "Summons") dated May 26, 1994 (hereinafter, the "Issuance Date"). By Certificate of Service dated June 10, 1994 one Dennis Panagrossi certified that on June 7, 1994—*i.e.* eleven (11) days after the Issuance Date—he served the Summons and a copy of the Complaint upon the Defendants by first class U.S. Mail, postage prepaid. The Defendants concede that they *actually received* the Summons and Complaint by mail on or about June 10, 1994. Prior to the instant hearing, no *alias* summons was either requested by the Plaintiff or issued by the Clerk.

On August 2, 1994, upon the request of the Plaintiff[2], the Clerk entered a Default against the Defendants for their failure to file a responsive pleading to the Complaint. On September 15, 1994, the Plaintiff filed its "Motion to Enter Judgment by Default as to Defendants ..."[3] The 120–day service window afforded by Rule 4(j), if applicable, would have expired September 20, 1994. On September 27, 1994, Attorney Peter A. Kelly entered an appearance in this adversary proceeding on behalf of the Defendants, and

---

1. Fed.R.Bank.P. 7004(a) provides that "Rule 4 ... (j) F.R.Civ.P. applies in adversary proceedings." However, Fed.R.Bank.P. 7004(g) states that the "subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules shall be the subdivisions of Rule 4 F.R.Civ.P. in effect on January 1, 1990, notwithstanding any amendment to Rule 4 F.R.Civ.P. subsequent thereto."

2. Plaintiff's counsel's certificate of service indicates that this request was not served directly upon the Defendants. Rather, it was served by mail on July 5, 1994, upon the United States Trustee, the Defendants' Chapter 7 Trustee, and John D. Ronshagen, the Defendants' attorney in their main bankruptcy case.

3. This motion was served on September 14, 1994, in the same manner and upon the identical entities stated in fn. 2, *supra*.

filed the instant "Motion to Vacate Default and for Summary Judgment".

## IV. DISCUSSION

Fed.R.Bank.P. 7004 governs the service of process in bankruptcy adversary proceedings. Fed.R.Bank.P. 7004(f) provides, in relevant part, that "[i]f service is made by any authorized form of mail, the summons and complaint shall be deposited in the mail within 10 days following issuance of the summons. If a summons is not timely . . . mailed, another summons shall be issued and served."

In this case the Plaintiff admits that its purported mail service on the eleventh day following the Issuance Date was untimely under Fed.R.Bank.P. 7004(f). Yet it argues that the consequence of such untimely service should be, at worst, a required re-serving of the Defendants under an *alias* summons.

▇▇ The Plaintiff is correct, at least insofar as Fed.R.Bank.P. 7004(f) is concerned. This ten-day rule is plainly and logically crafted with a view toward alleviating any prejudice which may arise if a defendant's responsive pleading window (*i.e.* thirty (30) days from summons' issuance) is unduly narrowed or eliminated by late service of process. This intent is confirmed by the nature of the remedy prescribed for non-compliance with the rule: the issuance of a new summons so as to schedule a new and adequate time for responsive pleading.[4]

However, the gravamen of Defendants' argument is that Fed.R.Bank.P. 7004(f) cannot

be looked at in isolation. They contend that under the facts of this case Rule 4(j)[5] mandates the dismissal of the instant adversary proceeding. Though somewhat unartfully pled as a motion for summary judgment, this Court will treat the Defendants' Motion as a motion to dismiss under Rule 4(j) and/or Fed.R.Civ.P. 12(b)(5), made applicable to this adversary proceeding by Fed.R.Bank.P. 7012(b).

Rule 4(j) provides, in relevant part, as follows:

> If *service* of the summons and complaint is not made *upon* a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show *good cause why such service was not made within that period,* the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. . . .

Fed.R.Civ.P. 4(j) (1990) (emphasis supplied).

Within the posture of this case, a violation of the 120–day limitation of Rule 4(j) carries with it a draconian result, *i.e.* dismissal, nominally "without prejudice", but with actual prejudicial effect. The seemingly benign impact of a dismissal "without prejudice" belies the fatal consequences which attend such a dismissal when the applicable statute of limitations or, as here, the objection deadline, has run as to the subject defendants. *E.g., Frasca v. United States,* 921 F.2d 450, 453 (2d Cir.1990); *In re Sciarretto,* 170 B.R. 33, 37 (Bankr.D.Conn.1994).[6]

---

4. There is no counterpart to Fed.R.Bank.P. 7004(f) in the Federal Rules of Civil Procedure. This absence further confirms the purpose of Fed.R.Bank.P. 7004(f). An initial ten-day opportunity for service is unnecessary under the Federal Rules of Civil Procedure because the responsive pleading window thereunder (20 days) begins to run only from the date a defendant is actually served. Fed.R.Civ.P. 12(a)(1)(A). By contrast, because the Bankruptcy Rule responsive pleading window runs from the date of summons issuance, Fed.R.Bank.P. 7012(a), a ten-day rule such as Fed.R.Bank.P. 7004(f) is necessary to relieve a defendant from an unduly shortened responsive pleading window.

5. Although the Defendants' Motion erroneously cites to Fed.R.Civ.P. 4(m) as the governing Rule,

see fn. 1, *supra,* this Court will read the Defendants' Motion liberally to refer to Rule 4(j).

6. Fed.R.Civ.P. 4(j) was amended in 1993 to make dismissal absent good cause discretionary with the trial court rather than mandatory as under the previous version of the Rule. *See generally* 1993 Advisory Committee Note to Fed.R.Civ.P. 4 (noting that the amendment to Fed.R.Civ.P. 4(j) "authorizes the court to relieve a plaintiff of the consequences of an application of the subdivision even if there is no good cause shown"). Thus the effect of Fed.R.Bank.P. 7004(g)'s "freezing" of incorporated Fed.R.Civ.P. 4(j) in its 1990 form creates a seemingly anomalous disparity in application of Rule 4(j) (presently, Fed.R.Civ.P. 4(m)) between the Bankruptcy and District Courts, *i.e.* the District Courts, but not the Bankruptcy

Under Rule 4(j) this Court's analysis focuses on (1) whether "service ... upon" the Defendants was made within 120 days after the filing of the Complaint; and (2) whether the Plaintiff has shown "good cause" why service was not made within that time-frame. For the purposes of this Memorandum of Decision these issues will be treated in reverse order.

## A. "Good Cause" Under Rule 4(j).

■ A Bankruptcy Court may relieve a plaintiff from the effect of Rule 4(j)'s 120–day service dictate if the Court finds, in the words of the Rule, "good cause why ... service was not made within that period". The burden to demonstrate good cause for failure to serve within the 120–day window rests with the Plaintiff. *In re Sciarretto,* 170 B.R. 33, 36 (Bankr.D.Conn.1994).

■ Assuming for the moment that service defective only in its failure to comply technically with Fed.R.Bank.P. 7004(f) triggers the operation of Rule 4(j), the Court finds that if the Plaintiff's counsel had reviewed the status of service before the expiration of the 120–day window, she would have recognized the infirmity and corrected the same forthwith. Accordingly, the Court finds that Plaintiff's counsel did not recognize the service defect within the 120–day window of Rule 4(j). Consequently, this Court's "good cause" inquiry focuses upon whether Plaintiff's counsel's neglect of review of the propriety of service was justified under the circumstances.[7]

Three relatively recent decisions of the Second Circuit Court of Appeals provide useful guidance to this Court in deliberating the facts of this case under the standards of Rule 4(j). *McGregor v. United States,* 933 F.2d 156 (2d Cir.1991); *Zankel v. United States,* 921 F.2d 432 (2d Cir.1990); *Santos v. State Farm Fire and Casualty Company,* 902 F.2d 1092 (2d Cir.1990). Although helpful, none of these opinions address the specific factual scenario presented by the instant case.

Courts, may relieve a plaintiff from the harsh effect of a defective service-induced dismissal *even if good cause is not demonstrated.*

In *Santos* the Court of Appeals vacated an order of the District Court dismissing an action in which proper service was not effected within the 120–day window of Rule 4(j). The Court of Appeals determined under Fed. R.Civ.P. 12(h)(1) that the defendant had "waived" the service defect by filing an answer which raised an affirmative defense of lack of personal jurisdiction, but not insufficiency of service of process. *Id.* Although the Court of Appeals' decision is not premised specifically upon "good cause", the following summary of the Court's reasoning is instructive:

> [a] defendant cannot justly be allowed to *lie in wait,* masking by misnomer its contention that service of process has been insufficient, and then obtain a dismissal on that ground only after the statute of limitations has run, thereby depriving the plaintiff of the opportunity to cure the defect.

*Id.,* at 1096 (emphasis supplied).

In *Zankel* the Court of Appeals again refused to affirm a District Court's dismissal of an action under Rule 4(j). While, like *Santos,* the Court's holding is premised on grounds other than "good cause", the Court of Appeal's philosophy is instructive for present purposes. In *Zankel* the defendant United States actually filed an answer well within the 120–day window of Rule 4(j). That answer, in contrast to the one lodged in *Santos,* specifically raised "improper" service of process as an affirmative defense. Despite this clear notice of some defect in service, and the plaintiff's failure to cure the same within the 120–day window, the Court found it "arguable" that the defendant had "lulled plaintiffs into believing" that their original service was satisfactory. *Id.,* at 437. The Court appeared deeply troubled by (1) the apparent refusal by the defendant to clarify, upon request, its service-related affirmative defense and (2) the defendant's delay in seeking dismissal until after the underlying statute of limitations had run. *Id.*

7. It is well-established that attorney neglect will be imputed to an otherwise innocent client. *See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993).

The service and pleading scenario in *McGregor* is similar to that presented in *Zankel:* after prompt but defective service, the defendant filed an answer well within the 120–day period of Rule 4(j), raising as an affirmative defense "[in]sufficiency of process". *McGregor, supra,* 933 F.2d at 158. Despite this relatively unambiguous signalling of an alleged defect in service of process, the plaintiff claimed that her counsel was misled by the defendant through conduct which allegedly obscured or minimized the significance of the alleged defect. The allegedly offending conduct included (1) a linkage of insufficiency of process and statute of limitations defenses in the defendant's answer, (2) the failure of the defendant to mention the defect in scheduling discussions, and (3) prior to the filing of an answer, the failure of the defendant to respond to an informal query by plaintiff's counsel as to whether insufficiency of process would be raised as an affirmative defense. *Id.,* at 159–60. After rejecting the plaintiff's contention that such conduct was misleading, the Court affirmed the District Court's exercise of discretion in refusing to excuse the plaintiff's late service for "good cause". *Id.,* at 160. It is apparent that the Court of Appeals found as particularly relevant the fact that the government's answer had placed the plaintiff on notice of the allegedly defective service of process, and that the plaintiff had approximately two months thereafter to correct the alleged defect. *Id.,* at 161.

For the purposes of this Memorandum of Decision, the foregoing Circuit decisions may be distilled to the following formulations:

1. Where a defendant's *affirmative conduct* reasonably *misleads* a plaintiff as to the sufficiency of service of process, and thereby induces prejudicial inaction, good cause exists to excuse such inaction. *See Santos; Zankel.*

2. Where a defendant's *affirmative conduct* reasonably *alerts* a plaintiff as to an alleged insufficiency of service of process within the reasonable period of time prior to the expiration of the 120–day window of Rule 4(j), good cause does not exist to justify a failure to effect proper service. *See McGregor.*

The facts of the instant case do not fall squarely within either of these two paradigms. Namely, there is no evidence that the Defendants undertook any *affirmative* conduct, misleading or otherwise, until the 120–day window of Rule 4(j) had closed. Rather, despite their receipt of all process to which they were entitled within twenty days of the filing of the Plaintiff's Complaint, the Defendants remained passive until a judgment by default was sought against them, responding affirmatively then only after the passing of Rule 4(j)'s 120–day period. Thus the question raised here, but not specifically addressed by Circuit authority, is whether defendants who have received actual notice of the commencement of a proceeding against them, may obtain a dismissal of such proceeding by consciously avoiding taking action in that proceeding until the 120–day window of Rule 4(j) has closed. Under the circumstances of this case, this Court answers that query in the negative. The conscious inaction found here is akin to the conduct found to be "misleading" in *Zankel,* and to operate as a "waiver" in *Santos.* Further, there exists here no affirmative conduct which, as in *McGregor,* could have served to alert the Plaintiff to the alleged defect in service.

This Court finds that the Defendants' inaction within the 120–day window of Rule 4(j) was a conscious attempt to delay this proceeding and to obtain the technical windfall of a Rule 4(j) dismissal with its attendant prejudicial effect. This finding is supported by, *inter alia,* the Defendants' concession that they actually received the Summons and Complaint early in the proceedings. Further, the Defendants took prompt and decisive action to prevent the Plaintiff from obtaining a default *judgment* only after the 120–day period of Rule 4(j) had elapsed. By contrast the Plaintiff's request for the entry of a default—made well within the 120–day window of Rule 4(j), and served in the same manner as Plaintiff's Motion—like the Summons and Complaint, met with neither response nor resistance from the Defendants.

While it can be argued that the Defendants had no duty to plead if not properly served, *see, e.g., Zankel, supra,* 921 F.2d at 437; *In*

*re Reeves,* 127 B.R. 866, 868 (Bankr.S.D.Cal. 1991), it does not follow that they should be able to reap a technical [8] windfall by such inertia. More simply stated, although defendants with actual, albeit technically defective, notice of proceedings may be able to achieve delay through conscious inaction, they should not be permitted to broker an ultimate disposition in their favor by such conduct. Equity must prevent the law from rewarding defendants who, in the words of *Santos,* "lie in wait".[9]

Accordingly, the Court finds, under the facts of this case, "good cause" justifying the Plaintiff's failure to effect timely service within the 120–day window of Rule 4(j). Alternatively, the Court finds that through their conscious inaction the Defendants waived any benefit they might otherwise achieve under Rule 4(j).

## B. The Concept of "Service" in Rule 4(j).

Though not critical to its ruling given the foregoing findings of "good cause" and "waiver" under Rule 4(j), this Court's decision may be supportable also by a legal conclusion that Rule 4(j) is simply not applicable to the facts of this case. Arguably, by its terms, Rule 4(j) reserves its harsh result for those instances where there is a complete lack of "service ... upon" a defendant, not merely a circumstance where, although actually served, a defendant is afforded insufficient time to plead. Arguably, the Court could conclude that the concept of "service" in Rule 4(j) encompasses an instance of service completed in an appropriate *manner,* albeit *tardily* under the standard of Fed.R.Bank.P. 7004(f).

Besides its adherence to the plain language of Rule 4(j), this construction is consonant with Circuit authority permitting more liberal construction of service rules in those cases where a defendant has received actual notice. *E.g., Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir.1972); *Nowell v. Nowell,* 384 F.2d 951, 953 (5th Cir.1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968). In this connection the Defendants have conceded actual receipt by mail of the Summons and Complaint. Such receipt arguably constitutes "service ... upon" the Defendants within the meaning and intendment of Rule 4(j) [10]; and thus the

---

**8.** The Defendants are standing on a true technicality in this case. All mail service in bankruptcy adversary proceedings contemplates a risk that responsive pleading time may be shortened to less than 20 days due to normal postage delivery delays. Because the Summons and Complaint were deposited in the mail only one day late, it is completely conceivable that the Defendants received due notice of the proceeding against them as soon as, or possibly in advance of, hypothetical defendants residing in a different postal service area.

**9.** This Court acknowledges the decisions of sister courts which have granted Rule 4(j) dismissals in favor of defendants under facts similar to those at bar. *E.g., Reeves, supra; In re Wilson,* 96 B.R. 301 (Bankr.E.D.Cal.1989). While these cases can be narrowly distinguished on their unique facts, this Court feels that the Ninth Circuit authority guiding these bankruptcy courts, *Whale v. United States,* 792 F.2d 951 (9th Cir.1986); *Wei v. State of Hawaii,* 763 F.2d 370 (9th Cir.1985), has not explored the impact of plaintiffs' conduct—active or passive—nearly to the degree displayed in the governing Second Circuit authority discussed *supra.* To the extent that these decisions are not distinguishable on the facts or law, this Court must respectfully disagree with their rulings.

**10.** Such a conclusion would necessarily imply that mail service upon the Defendants was sufficient under the applicable federal rules. In adversary proceedings, Fed.R.Bank.P. 7004(b) authorizes service of process upon various classes of defendants within the United States via first class mail. In the instant case, the Defendants were served as "individuals" pursuant to Fed. R.Bank.P. 7004(b)(1), *i.e.* by the "mailing [of] a copy of the summons and complaint to the individual's dwelling house or usual place of abode ..." However, one could argue, and some courts have held, *see, e.g., In re Bloomingdale,* 137 B.R. 351, 354 (Bankr.C.D.Cal.1991), that the service option provided by Fed.R.Bank.P. 7004(b)(9) overrides Fed.R.Bank.P. 7004(b)(1) in the case of individual *debtor* -defendants.

Fed.R.Bank.P. 7004(b)(9) prescribes that service upon a "debtor" may be accomplished by "mailing copies of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address." This Court takes judicial notice of the fact that the Debtor–Defendants were represented by a bankruptcy attorney at the time of the initiation of this adversary proceeding, and that service was not certified to have been made upon

120–day requirement of Rule 4(j) may be deemed satisfied by the Plaintiff on the date of its certified mail service upon the Defendants.

However, as noted *supra*, given the Court's findings of "good cause" and waiver, a formal ruling on this legal question is unnecessary to this Court's decision on the instant motions. Therefore, the Court declines to so rule at this time.

## V.  CONCLUSION

For the foregoing reasons the Court finds "good cause" justifying the Plaintiff's failure to complete timely service within the 120–day window of Rule 4(j). Further, the Court finds that by their conduct the Defendants waived any rights to which they were entitled under Rule 4(j).

that attorney, by mail or otherwise. Therefore, service of process upon the Defendants was not effected under Fed.R.Bank.P. 7004(b)(9).

However, this Court does not read Fed.R.Bank.P. 7004(b)(9) to prescribe an exclusive manner of service upon defendants who also happen to be debtors. While acknowledging the general principle of statutory construction—apparently applicable to rule construction as well—that a specifically applicable enactment controls over a more general provision, *see e.g., Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 444, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *American Land Title Ass'n v. Clarke,* 968 F.2d 150 (2d Cir.1992), where there is a contrary legislative and/or judicial intent in promulgating a given rule, this maxim must yield to such intent. *See id.* The Court believes that such is the case here. Plainly, Fed.R.Bank.P. 7004(b)(9) is *less* calculated than Fed.R.Bank.P. 7004(b)(1) to effect actual notice to individual defendants. This is true because under Fed.R.Bank.P. 7004(b)(9) a plaintiff is permitted to rely on the court file in referencing addressee information. Service effected in this manner may fail to provide actual notice to the debtor-defendants be-

cause such defendants might fail to update their address with the bankruptcy court, and their attorneys may fail to inform them of the pendency of an action against them. In the case of Fed.R.Bank.P. 7004(b)(1), however, a plaintiff cannot simply rely upon the court file to ascertain where to direct mail service; (s)he must determine the *actual* place of abode of an individual defendant.

Common-sense and general principles of bankruptcy jurisprudence dictate that Fed.R.Bank.P. 7004(b)(9) be viewed as providing simply an alternative method of service upon defendants who, in most cases, have voluntarily subjected themselves to the jurisdiction of the court as debtors. Less surety of service is logically required for individuals, such as debtors, who are already subject to the court's personal and subject matter jurisdiction in the bankruptcy case within which the subject adversary proceeding arises.

In view of the foregoing, it would be nonsensical to penalize the Plaintiff for employing the method of mail service most calculated to apprise the Defendants of the pendency of the action against them.