**Mousa MUSED, individually and d/b/a Sycamore Food Mart, Plaintiff,**

v.

**UNITED STATES of America DEPARTMENT OF AGRICULTURE FOOD AND NUTRITION SERVICE, Defendant.**

No. 95–CV–459(A).

United States District Court, W.D. New York.

Sept. 19, 1996.

Leonard Walentynowicz, Buffalo, New York, for Plaintiff.

MaryEllen Kresse, Assistant United States Attorney, Buffalo, New York, for Defendant.

1. The Food and Nutrition Service, named by plaintiff as a defendant, was abolished when the Department of Agriculture was reorganized by act of Congress in October 1994. The food stamp program was reassigned, along with all of the personnel and procedures relevant to these actions, to the newly created Food and Consumer Service.

2. See 7 U.S.C. § 2011 et seq.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

Currently before the Court is the motion of defendant, United States of America Department of Agriculture, Food and Consumer Service ("FCS"),[1] to dismiss plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(5), for failure to make timely service on the United States in accordance with Fed.R.Civ.P. 4(i)(1) and 4(m). After considering the submissions of the parties and hearing argument from counsel, the Court grants defendant's motion to dismiss.

### BACKGROUND

Plaintiff, Mousa Mused, is a grocer operating a food store at 1196 Sycamore Street, Buffalo, New York. Plaintiff alleges that he was authorized to participate in the federal food stamp program[2] and that more than 22% of his business involved the use of food stamps. He claims that the FCS permanently disqualified his store from participating in the food stamp program in March 1995 for alleged violations involving the exchange of food stamps for ineligible items and acceptance of food stamps for cash. Plaintiff pursued administrative review of the disqualification by the FCS and the FCS affirmed its decision to disqualify him. The FCS notified plaintiff of his permanent disqualification by letter on May 12, 1995.

Plaintiff commenced this action on June 9, 1996, within the 30–day statute of limitations under 7 U.S.C. § 2023,[3] seeking judicial review of his store's permanent disqualification from the food stamp program. He served the FCS on June 12, 1995, and the Attorney General of the United States ("Attorney General") on June 13, 1995, both by certified

3. 7 U.S.C. § 2023 provides in relevant part:

If the store ... feels aggrieved by such final determination [of disqualification], it may obtain judicial review thereof by filing a complaint ... within thirty days after the date of delivery or service of the final notice of determination upon it, requesting the court to set aside such determination.

mail. He did not serve or attempt to serve the United States Attorney ("U.S. Attorney").

The case sat dormant from June 13, 1995 until April 15, 1996. During that time, defendant did not file an answer and plaintiff took no further action to prosecute the case. On April 15, 1996, the Court issued an order requiring plaintiff to show cause by May 13, 1996, why the case should not be dismissed for failure to prosecute ("Order to Show Cause"). On May 1, 1996, approximately two weeks after receiving the Order to Show Cause, plaintiff finally served the U.S. Attorney with a copy of the summons and complaint.

On May 14, 1996, one day *after* the Court's May 13 deadline for responding to the Order to Show Cause, plaintiff filed a motion for a two-day extension of the time to respond to the Order to Show Cause. Along with the motion, he filed a response to the Order to Show Cause.

In plaintiff's motion for an extension of time, plaintiff's counsel stated that he did not comply with the deadline in the Order to Show Cause because he had many other trial and family commitments. He further explained that he is a sole practitioner and, therefore, "does not have the resources that would enable him to comply with all time limitations without modification or allowance." (Item No. 4) In the response to the Order to Show Cause, plaintiff's counsel stated that:

> [t]hrough inadvertence, service upon the local office of the U.S. Attorney was not made until May 1, 1996. In the interval, no action was taken by the undersigned to move the [p]laintiff's case since it was usual practice to wait until he received a call from the U.S. Attorney's Office regarding same.

(Item No. 5).

On July 15, 1996, defendant filed the instant motion to dismiss the complaint for failure to effect service in accordance with Fed.R.Civ.P. 4. Defendant does not dispute that the U.S. Attorney was served on May 1, 1996, but argues that such service was untimely. Plaintiff filed a memorandum of law in opposition to the motion on July 30, 1996, and defendant filed a reply brief on August 2, 1996. Oral argument was held on August 7, 1996.

## DISCUSSION

### I. *The United States Is the Proper Defendant*

 7 U.S.C. § 2023 provides that a store disqualified from operating in the food stamp program by the FCS may obtain judicial review of the FCS decision "by filing a complaint against the *United States* in the United States court for the district in which it resides or is engaged in business. . . ." (emphasis added). Thus, the only proper defendant in this case is the United States. *See Martin's Food & Liquor, Inc. v. United States Dep't of Agric.*, 702 F.Supp. 215, 216 (N.D.Ill.1988); *cf. Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir.1990).

In his complaint, plaintiff names the "United States of America—Department of Agriculture—Food and Nutrition Service" as defendants. While it is not clear whether plaintiff has named these entities as three separate defendants or two, *i.e.*, the United States Department of Agriculture, and the Food and Nutrition Service, it is clear that to the extent plaintiff attempted to sue any entity other than the United States, the complaint must be dismissed as to such entity pursuant to § 2023.

### II. *Failure to Make Timely Service on Defendant*

Service of the United States is governed by Fed.R.Civ.P. 4(i)(1), which provides that service upon the United States shall be effected by serving the U.S. Attorney for the district in which the action is brought, as well as the Attorney General and the agency or officer. Service on the U.S. Attorney is to be effectuated by:

> delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney . . . or by sending a copy of the summons of the complaint by registered or certified mail addressed to the civil process

clerk at the office for the United States attorney.

Fed.R.Civ.P. 4(i)(1)(A). Fed.R.Civ.P. 4(m) requires that service be made within 120 days after filing of the complaint.

In this case, it is uncontested that plaintiff timely served the FCS and the Attorney General, in compliance with Rule 4(i)(1) and 4(m). He did not, however, serve the U.S. Attorney, as required by Rule 4(i)(1), until May 1, 1996, almost a full year after the complaint was filed and well over the 120 days provided for the completion of service under Rule 4(m).

Rule 4(m) provides, in relevant part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Thus, because plaintiff failed to complete service upon the U.S. Attorney within 120 days after the filing of the complaint, the Court must, under Rule 4(m), either dismiss this action without prejudice or extend the time for service.

### A. *Plaintiff Has Failed to Show Good Cause*

■ Under Rule 4(m), the Court must extend the time for service rather than dismiss the case if plaintiff shows "good cause" for the failure to effect service within 120 days. "Good cause" is generally found only in exceptional circumstances where the plaintiff's failure to make timely service was the result of circumstances beyond his control. *National Union Fire Ins. Co. v. Sun*, No. 93 Civ. 7170, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994).

■ Plaintiff argues that there is good cause in this case because his counsel followed the same procedures he normally follows in Food Stamp cases brought in this District. Plaintiff's counsel explains that it is his usual practice in Food Stamp cases to file his complaint, serve the FCS and the Attorney General, and then wait for a telephone call from the U.S. Attorney's office. In this case, however, he did not receive such a call.

This explanation does not establish good cause for several reasons. First, plaintiff's counsel provides no background as to the origin of this practice or any explanation as to what would prompt the U.S. Attorney to call him even though it had not yet been served. Second, there is no provision in the Federal Rules of Civil Procedure or any other statute or regulation providing for such a procedure. Third, as previously stated, the Federal Rules of Civil Procedure expressly require plaintiff to serve the U.S. Attorney by either personal delivery or mail; a telephone call from or to the U.S. Attorney is not a sufficient substitute for service. Finally, and perhaps most importantly, plaintiff's counsel fails to offer any reasonable explanation or justification for not further prosecuting the action when he did not receive the anticipated telephone call from the U.S. Attorney or when he did not receive an answer from the United States. It was not until two weeks after the Court issued its Order to Show Cause that plaintiff finally served the U.S. Attorney. It is well settled that an attorney's inadvertence, neglect, mistake or misplaced reliance does not suffice to establish good cause for failure to make proper service within 120 days. *See McGregor v. United States*, 933 F.2d 156, 160 (2d Cir. 1991); *Lovelace v. Acme Mkts., Inc.*, 820 F.2d 81, 84 (3d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

Plaintiff also argues that there is good cause in this case because the FCS "voluntarily stayed" its disqualification decision thereby leading plaintiff's counsel to believe that the case would settle. However, plaintiff has not provided any documentation verifying that the FCS actually stayed its disqualification decision. All there is in the record is the statement of plaintiff's counsel that there was such a stay. The government, on the other hand, disputes plaintiff's contention and contends, instead, that permanent disqualification was delayed in this case only due to administrative error. When

asked at oral argument about this point, plaintiff's counsel did not dispute the government's position that there was no actual stay, but stated that, in his experience, there is usually an "informal stay" in cases of this type.

In any event, even if the FCS did voluntarily stay permanent disqualification, plaintiff still had an obligation to prosecute this case in accordance with the Federal Rules of Civil Procedure. *Lovelace*, 820 F.2d at 84 ("When the 120-day period reaches its expiration and adequate proof of service of process has not been received, the plaintiff must take additional steps to ensure timely service of process, or, in the alternative, move under Fed.R.Civ.P. 6(b) for an enlargement of the time to effect service of process."). Plaintiff was required under Rule 4(i)(1) and Rule 4(m) to serve the U.S. Attorney within 120 days. Plaintiff's counsel certainly should have become aware that there was a problem when there was no answer filed and when no anticipated telephone calls or discussions regarding settlement were forthcoming. Instead, he allowed the case to languish for almost a year until the Court issued its Order to Show Cause. As stated above, such attorney neglect, inadvertence or misplaced reliance does not constitute good cause for plaintiff's failure to serve timely the U.S. Attorney.

In sum, the Court finds that plaintiff has not shown good cause for failing to serve timely the U.S. Attorney. He has been unable to establish that the failure to effect timely service was the result of exceptional circumstances beyond his control. Instead, the failure appears to have been solely the result of attorney neglect, inadvertence or misplaced reliance. Accordingly, because plaintiff has failed to show good cause, the Court is not required under Rule 4(m) to extend the time or completion of service.

**B.** *Court Will Not Exercise Its Discretion to Extend Time*

Even though an extension of time to effect service is not mandatory under Rule 4(m) in this case because plaintiff has failed to show good cause, the Court may, in its discretion, still extend the time to complete service rather than dismiss the case for improper service.[4] *See* Fed.R.Civ.P. 4(m), Advisory Committee's Notes (1993) (Rule 4(m) also "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown"). Under the facts and circumstances present here, however, the Court declines to exercise such discretion and finds that dismissal of the action is warranted.

Federal courts have generally held that, when a plaintiff has failed to complete service within 120 days and has not shown good cause for such failure, the court should dismiss the action rather than grant an extension of time to complete service. *National Union Fire Ins. Co.,* 1994 WL 463009, at *3. "[T]hough leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger." *Id.* at *4. "Creating exceptions to procedural rules will not enhance the ability of the courts to dispense justice, but rather will have the reverse effect." *Alexander v. Forest City Pierrepont Assoc.,* No. 94 Civ. 3961, 1995 WL 406135, at *3 (E.D.N.Y. June 26, 1995).

In this case, plaintiff has failed to offer any reasonable explanation or justification for his complete failure to make timely service upon the U.S. Attorney. In fact, there was not even a good faith attempt to make timely service. It was not until after the case sat dormant for almost a full year and the Court issued its Order to Show Cause that plaintiff finally attempted service upon the U.S. Attorney for the first time. This lack of diligence on the part of plaintiff militates against the Court exercising its discretion to excuse his failure to comply with Rule 4(m). *Lovelace,* 820 F.2d at 84 ("when there is a lack of diligent effort to ensure

---

4. Even though the Advisory Committee's Notes clearly state that Rule 4(m) allows the courts to extend the time period for service even in the absence of good cause, the courts are divided on this matter. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137, at 61 (Supp.1996).

timely service of process, an extension of time for service may be refused").

■ Plaintiff further argues that, because he properly served the FCS and Attorney General under Rule 4(i)(1), and the U.S. Attorney was aware of the case, even though it had not been served,[5] the United States was not prejudiced by his failure to serve timely the U.S. Attorney, and the Court should, therefore, exercise its discretion to grant an extension. The Court finds this argument unpersuasive. Neither actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with Rule 4(m), unless plaintiff has diligently attempted to complete service. *See McGann v. New York,* 77 F.3d 672, 674–75 (2d Cir.1996) (dismissing *pro se* complaint for failure to comply with Fed.R.Civ.P. 4(c)(2)(C) even though defendant had actually received summons and complaint); *Delicata v. Bowen,* 116 F.R.D. 564, 566 (S.D.N.Y.1987) (to extent prejudice to defendant is a valid inquiry, it is only relevant where plaintiff has been diligent in attempting to make service); *see also MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1097 (3d Cir.1995) ("absence of prejudice alone can never constitute good cause to excuse late service"), *cert. denied,* —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996); *In re City of Philadelphia Litig.,* 123 F.R.D. 512, 514 (E.D.Pa. 1988) ("Neither actual notice of the action nor absence of prejudice to the defendant is alone sufficient to support a finding of 'good cause' under the Rule; plaintiff must demonstrate diligence in attempting to complete service."). As previously stated, plaintiff did not exercise any diligence in this case.

■ Plaintiff also argues that the Court should exercise its discretion to extend the time to complete service because, if the case is dismissed at this point for failure to effect timely service, a refiled action stating the

same cause of action may be time-barred by the 30–day statute of limitations. This consequence, however, is not enough, by itself, to warrant an extension of the 120–day period for service. While the Advisory Committee's Notes on Rule 4(m) state that extension of time for service may be justified when the statute of limitations would bar the refiled action, "the running of the statute of limitations does not require the district court to extend time for service of process." *Petrucelli v. Bohringer & Ratzinger, GMBH,* 46 F.3d 1298, 1306 (3d Cir.1995). "[A]bsent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred." *Id.* at 1306, 1306 n. 7; *Santos v. State Farm Fire and Cas. Co.,* 902 F.2d 1092, 1094–95 (2d Cir.1990).[6] Although, as a general matter, it is preferable that courts adjudicate parties' claims on their merits, resort to the courts presupposes full compliance with those procedural rules that are fundamental. Rule 4(m) is such a rule. *In re City of Philadelphia Litigation,* 123 F.R.D. 515, 520 (E.D.Pa.1988); *see also Stranahan Gear Co. v. NL Indus., Inc.,* 800 F.2d 53, 57 (3d Cir. 1986) ("We do not believe that 'factors of justice and equity' can override the unambiguous terms of a specific service rule.").

This case is perhaps a textbook example of why the Federal Rules of Civil Procedure exist, why parties must diligently attempt to follow them, and why the courts must enforce them. The Rules clearly required plaintiff to serve the U.S. Attorney within 120 days of the filing of the complaint. This requirement is certainly not onerous, burdensome or unreasonable. Further, the procedure for accomplishing this requirement is specifically outlined in Rule 4 and is not complex or difficult. Plaintiff was simply required to mail or deliver a copy of the summons and complaint to the U.S. Attorney here in Buffa-

---

5. Counsel for the government admitted at oral argument that the U.S. Attorney's Office was aware of the case.

6. The Second Circuit has held that where there is evidence that the government also bears substantial responsibility for causing defective service or the government deliberately interfered with service, the district court may extend the time limit

for service even though there has been no showing of good cause by the plaintiff. *McGregor,* 933 F.2d at 161; *Zankel v. United States,* 921 F.2d 432, 437 (2d Cir.1990). In this case, however, plaintiff has not alleged that the government was responsible for his failure to make timely service on the U.S. Attorney, nor is there any evidence to support such an allegation.

lo. Plaintiff's counsel, however, decided, for his own reasons, to ignore the Rules and follow his own informal procedure for effecting service; a procedure not recognized by the Rules or any other statute or regulation. As a result, the U.S. Attorney was not timely served in accordance with the Rules, and the Court has been forced to expend already limited judicial resources on a threshold procedural issue that could have been easily avoided.

■ The Court fully recognizes that the end result of enforcing the Rules in this case may be harsh because dismissal of the action at this point, even if such dismissal is without prejudice, may result in plaintiff being denied an opportunity to have his claim adjudicated on its merits. The Court also recognizes the oft-stated judicial preference for adjudication of cases on their merits, and that the Rules are to be construed toward that end. However, if the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if it means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits. The purpose of the Rules is to provide litigants with a uniform set of procedures that will allow them "to secure the just, speedy, and inexpensive determination" of their dispute. *See* Fed. R.Civ.P. 1. Litigants and their lawyers are entitled to rely on the assumption that all other litigants and lawyers are operating under the same set of Rules and will be held accountable by the courts for noncompliance. If courts consistently ignore or excuse flagrant violations of the Rules, the Rules will be rendered illusory and the whole federal judicial system will become riddled with uncertainty, inconsistency and delay. Litigants and their attorneys must diligently attempt to follow the Rules, regardless of whether it is convenient or desirable. This proposition applies equally to plaintiffs as well as defendants, to corporate litigants as well as individual litigants, to rich litigants as well as poor litigants, and to big-firm lawyers as well as sole practitioners.

Here, plaintiff clearly failed to follow the Rules and has offered no reasonable justification for such failure. Instead, the failure was the result of lack of diligence on the part of plaintiff's counsel. Further, plaintiff has not come forth with any exceptional circumstances that would warrant excusal of or mitigate this failure. If the facts and circumstances in this case do not warrant dismissal under Rule 4(m), then the Rule should be scrapped and no case should ever be dismissed for untimely service. Accordingly, despite the possibly severe repercussions to the plaintiff, the Court will not exercise its discretion to extend the service period. *See Lovelace*, 820 F.2d at 84 (" 'Half-hearted' efforts by counsel to effect service ... do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run.").

### C. Fed.R.Civ.P. 4(i)(3) Does Not Require an Extension

Plaintiff finally argues that, even if an extension of time is not required or warranted under Rule 4(m), the Court is still required to grant an extension under Fed. R.Civ.P. 4(i)(3). Rule 4(i)(3) provides that "[t]he court shall allow a reasonable time for service of process under this subdivision for the purpose of curing the failure to serve multiple officers, agencies, or corporations of the United States if the plaintiff has effected service on either the United States Attorney or the Attorney General of the United States." The Court finds this argument unpersuasive.

■ The application and effect of Rule 4(i)(3), which was added in 1993, has not been widely addressed. The Seventh Circuit has held that it applies only to cases brought against an officer, agency, or corporation of the United States and not to cases directly against the United States. *Tuke v. United States*, 76 F.3d 155 (7th Cir.1996); *see also* Fed.R.Civ.P. 4(m), Advisory Committee's Notes (1993). In so holding, the court determined that Rule 4(i)(3) provides a cure for defective service under Rule 4(i)(2) which governs service of an officer, agency, or corporation of the United States, but does not provide a cure for defective service under Rule (i)(1) which governs service upon the United States. *Tuke*, 76 F.3d at 158; *see*

*also Coates v. Shalala,* 914 F.Supp. 110, 113 n. 5 (D.Md.1996). This case, like *Tuke,* is an action against the United States, not an officer, agency or corporation of the United States, and is, therefore, governed by the service provisions of Rule 4(i)(1), not Rule 4(i)(2). Accordingly, Rule 4(i)(3) does not provide a cure for defective service in this case.

Even if it is assumed *arguendo* that Rule 4(i)(3) is applicable to service under Rule 4(i)(1), the Court would not extend the time to complete service under the facts of this case. Rule 4(i)(3) provides that the court shall allow "a reasonable time" to cure defects in service of process. *Espinoza v. United States,* 52 F.3d 838, 842 (10th Cir. 1995). Here, plaintiff filed the summons and complaint on June 9, 1995. He did not serve the U.S. Attorney, as required by Rule 4(i)(1), until May 1, 1996, a period of almost one year after the filing of the complaint and over 200 days after the expiration of the 120–day period of service. As previously stated, he has been unable to give an acceptable excuse for this significant delay. This is not the sort of "reasonable" extension of the 120–day rule that should be sanctioned by the Court.[7] *Tuke,* 76 F.3d at 158 (finding that even if Rule 4(i)(3) were applicable, plaintiff's lack of diligence in effecting proper service of the United States was not reasonable).

### CONCLUSION

For the reasons stated, the Court grants defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(5), for failure to make timely service on the defendant in accordance with Fed.R.Civ.P. 4(i)(1) and 4(m), and hereby dismisses this action, without prejudice. The Clerk of the Court is hereby ordered to enter judgment in favor of defendant and to take all steps necessary to close the case.

IT IS SO ORDERED.

---

**7.** Plaintiff argues that a "reasonable time to cure" the defect in service should be a reasonable time from the point when plaintiff realized the defect, not the point when the defect actually occurred. This argument is unpersuasive. The Court cannot simply ignore the time that has passed beyond the 120–day period just because plaintiff was not aware of it. Any extension of time would necessarily have to take into consideration the time that has lapsed since the 120–day period expired, otherwise the 120–day limit would be meaningless. This reasoning is consistent with the holding that "the request for a judicial extension of the 120–day period must be sought prior to the expiration of that period." *Alexander v. Forest City Pierrepont Assoc.,* 94 Civ. 3961, 1995 WL 406135, at *2 (E.D.N.Y. June 26, 1995) (interpreting *Yosef v. Passamaquoddy Tribe,* 876 F.2d 283, 287 (2d Cir.1989), *cert. denied,* 494 U.S. 1028, 110 S.Ct. 1474, 108 L.Ed.2d 611 (1990)).